**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| MELVYN KLEIN , Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VANTIV, INC., JEFFREY STIEFLER, CHARLES DRUCKER, LEE ADREAN, KEVIN COSTELLO, MARK HEIMBOUCH, LISA HOOK, DAVID KARNSTEDT, GARY LAUER, BOON SIM, and MARK SUNDAY,<br><br>Defendants. | Civil Action No. 1:17-cv-739<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JUDGE BLACK** |

## FIRST AMENDED COMPLAINT

1. Melvyn Klein ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

2. This is a class action brought by Plaintiff on behalf of himself and the other ordinary shareholders of Vantiv, Inc. ("Vantiv" or the "Company"), except Defendants (defined below) and their affiliates, against Vantiv and the members Vantiv's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R.

240.14a-9, and 17 C.F.R. § 229.1015(b)(4) in connection with the proposed merger (the "Proposed Merger") between Vantiv and Worldpay Group plc ("Worldpay").

3. On August 9, 2017, the Board caused the Company to enter into an Amended and Restated Co-operation Agreement (the "A&R Co-operation Agreement"), pursuant to which Vantiv, in a mixed stock and cash deal, will acquire Worldpay, with Vantiv continuing as the surviving entity (the "Combined Company"). Worldpay shareholders will be entitled to receive, 55 pence in cash and 0.0672 new shares of Vantiv Class A common stock plus an interim dividend of 0.8 pence, paid on October 23, 2017, and a special dividend of 4.2 pence expected to be payable on the business day immediately preceding the effective date of the Acquisition for each share Worldpay common stock they own (the "Merger Consideration"). Upon consummation of the Proposed Merger, Worldpay shareholders will own approximately 43.0% of Vantiv's fully diluted Class A common stock.

4. On, September 25, 2017, the Board authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. As discussed below, the Board knew it was overpaying for Worldpay and nevertheless entered into the Merger Agreement. Now Defendants ask Vantiv's shareholders to vote in favor of the Proposed Merger based upon the materially incomplete and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6. Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the financial analyses performed by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Credit Suisse Securities (USA) LLC ("Credit Suisse" and together with Morgan Stanley, the "Financial Advisors"), in support of their fairness opinions; and (ii) potential conflicts of interest the Financial Advisors faced as a result of their historical, present, and future dealings with each party.

7. The special meeting of Vantiv shareholders to vote on the Proposed Merger is forthcoming. It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

8. For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Vantiv shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Vantiv maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District;

and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12. Plaintiff is, and has been at all relevant times, the owner of Vantiv common stock and held such stock since prior to the wrongs complained of herein.

13. Defendant Vantiv is a Delaware Corporation with its principle executive offices located at 8500 Governors Hill Drive, Symmes Township, Ohio 45249. Vantiv is the largest merchant and PIN debit acquirer in the US, based on number of transactions, processing 25 billion transactions and nearly $1 trillion in sales volume annually. Vantiv's common stock trades on the NYSE under the symbol "VNTV".

14. Individual Defendant Jeffrey Stiefler is a director of Vantiv and is the Chairman of the Board.

15. Individual Defendant Charles Drucker is a director of Vantiv and is the President and Chief Executive Officer of the Company.

16. Individual Defendant Lee Adrean is, and has been at all relevant times, a director of the Company.

17. Individual Defendant Kevin Costello is, and has been at all relevant times, a director of the Company.

18. Individual Defendant Mark Heimbouch is, and has been at all relevant times, a director of the Company.

19. Individual Defendant Lisa Hook is, and has been at all relevant times, a director of the Company.

20. Individual Defendant David Karnstedt is, and has been at all relevant times, a director of the Company.

21. Individual Defendant Gary Lauer is, and has been at all relevant times, a director of the Company.

22. Individual Defendant Boon Sim is, and has been at all relevant times, a director of the Company

23. Individual Defendant Mark Sunday is, and has been at all relevant times, a director of the Company

24. The defendants identified in paragraphs 13-23 are collectively referred to as the "Defendants".

**CLASS ACTION ALLEGATIONS**

25. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Vantiv common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

26. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of September 25, 2017, Vantiv had approximately 162 million shares outstanding.

(b) The holders of these shares are believed to be geographically dispersed through the United States;

(c) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated.

(d) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(e) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(f) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(g) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A. Background and the Proposed Merger.

27. Vantiv, Inc. is a holding company. The Company conducts its operations through its subsidiary, Vantiv Holding, LLC. The Company is a payment processor. The Company's segments include Merchant Services and Financial Institution Services. The Company offers a range of payment processing services that enable its clients to meet their payment processing needs through a single provider. The Company enables merchants to accept and process credit, debit, and prepaid payments, and provide them supporting value-added services, such as security solutions and fraud management, information solutions, and interchange management. It also provides payment services to financial institutions, such as card issuer processing, payment network processing, fraud protection, card production, prepaid program management, automated teller machine (ATM), driving and network gateway, and switching services that utilize the Company's Jeanie personal identification number (PIN) debit payment network.

28. Worldpay Group plc is a United Kingdom-based company, which provides a range of technology-led payment products and services. The Company operates through four segments:

Global eCom, WPUK, WPUS, and Corporate. Global eCom provides a range of payment services, both online and by mobile, to accept, validate, and settle payments in approximately 126 currencies across 146 countries, using any one of over 300 payment methods. WPUK provides in-store, phone, online, and mobile payment acceptance solutions for over 300,000 United Kingdom and Ireland-based customers, from small and medium enterprises (SMEs) to large corporates. WPUS provides in-store, online and mobile payment acceptance solutions for the United States-based customers, with a focus on developing omni-channel and integrated payment solutions for its approximately 109,000 SME customers, and vertical specific solutions for its approximately 13,000 enterprise customers in the grocery, petroleum, restaurant, and retail industries.

29. On August 9, 2017, Vantiv issued a press release announcing the Proposed Transaction. The press release stated in relevant part:

> CINCINNATI and LONDON, Aug. 9, 2017 /PRNewswire/ -- The boards of directors of Vantiv, Inc. (NYSE: VNTV) and Worldpay Group plc (LSE: WPG) today announced that they have reached agreement on the terms of a recommended merger of Worldpay with Vantiv and Vantiv UK Limited (a subsidiary of Vantiv).
>
> Under the terms of the merger, which have been further detailed today in an announcement issued under Rule 2.7 of the UK Takeover Code, Worldpay shareholders will be entitled to receive £0.55 cash for each Worldpay share held and 0.0672 of a New Vantiv share. Worldpay shareholders will also be entitled to elect to vary these proportions under a mix and match facility (subject to offsetting elections being made by other Worldpay shareholders). Vantiv and Worldpay shareholders are expected to own approximately 57% and 43%, respectively, of the combined company's shares upon closing.
>
> In addition, Worldpay shareholders will be entitled to receive an interim dividend of 0.8 pence per Worldpay share, and a special dividend of 4.2 pence per Worldpay share, which is conditional on completion of the merger.
>
> The transaction will create a company with an enterprise value of £22.2 billion or US$28.8 billion. It contemplates a premium of approximately 34% to Worldpay's six-month volume weighted average price, and ascribes Worldpay an enterprise value of approximately £9.3 billion or US$12.0 billion.

> The combination will result in the creation of a leading global payment provider to power omni-commerce, with comprehensive products and capabilities spanning traditional merchants, integrated payments, and global eCommerce. The merger will combine two of the most capable payments businesses in the world, with strong pro-forma growth and profitability, creating a business model with recurring revenue, diversified customer base, significant global reach, and robust financial performance.
>
> "This is a powerful combination that is strategically compelling for both companies. It joins two highly complementary businesses, and it will allow us to achieve even more together than either organization could accomplish on its own," said Charles Drucker, president and chief executive officer of Vantiv. "Our business will have multiple opportunities to enhance its leading growth profile, driven by our global eCommerce capabilities, the strength of our people and their consistent focus on execution. Our combined company will have unparalleled scale, a comprehensive suite of solutions, and the worldwide reach to make us the payments industry global partner of choice."
>
> "This is a merger of two world class payment companies, which will create a global omni-commerce leader, with substantial opportunities to capitalize on the rapid evolution of payments," said Philip Jansen, chief executive officer of Worldpay. "The growth of eCommerce and the way consumers expect to transact is increasing complexity for businesses around the world. Our unique combination of scale, innovation, technology and global presence will mean that we can offer more payment solutions to businesses, whether large or small, global or local, enabling them to meet consumers' increasing demands and helping them prosper."

**B. The Proposed Merger Undervalues Vantiv**

30. The Merger Consideration will result in a 57% - 43% ownership split only slightly favoring Vantiv. This ownership structure undervalues Vantiv and is unfair to Vantiv shareholders.

31. In the year leading up to the announcement of the Merger Agreement, Vantiv stock rose nearly 20% going from $54.64 on August 8, 2016 to $64.85 on August 7, 2017, as illustrated by the chart below:




32. Indeed, on August 9, 2017, Vantiv announced positive financial results for the second quarter ended June 30, 2017. Total revenue increased 12% to $998.8 million as compared to $891.2 million in the prior year period. Net revenue increased 10% to $530.0 million as compared to $480.5 million in the prior year period. On a GAAP basis, net income per diluted share attributable to Vantiv, Inc. increased 11% to $0.42 as compared to $0.38 in the prior year period. Pro forma adjusted net income per share increased 19% to $0.83 as compared to $0.70 in the prior year period. President and CEO Drucker made the following comments:

> Our scale, distribution and technology have enabled us to consistently generate strong net revenue growth. Our team continues to execute at the highest level, bringing our strategy of investing in high growth channels and verticals to life in a way that enhances our growth potential and increases shareholder value.

33. Despite the excessive Merger Consideration, the Board has agreed to the Proposed Merger. It is therefore imperative that Vantiv's shareholders are provided with the material

information that has been omitted from the Proxy, so that they can meaningfully assess whether the Proposed Merger is in their bests interests prior to the forthcoming shareholder vote.

**C. The Proxy Is Materially Incomplete and Misleading**

34. On September 25, 2017, Vantiv filed the Proxy with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

35. With respect to the Financial Advisors' various discounted cash flow analyses, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the discount rate ranges; (ii) the inputs and assumptions underlying the calculation of the EBITDA terminal value multiples; (iii) the actual terminal values calculated and used; (iv) the value of the "Synergies" used in the *Pro Forma Discounted Cash Flow Analysis*; and (v) net debt expected to result from the Merger.

36. These key inputs are material to Vantiv shareholders, and their omission renders the summary of the Financial Advisors' Discounted Cash Flow Analyses in the Proxy incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of

> cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

37. With respect to Morgan Stanley's *Discounted Equity Value* Analyses, the Proxy fails to disclose the inputs and assumptions underlying both Vantiv and Worldpay's discount rates/costs of equity and EBITDA multiple ranges. With respect to Morgan Stanley's *Illustrative Intrinsic Value Analysis*, the proxy fails to disclose: (i) the inputs and assumptions underlying the calculations of the various discount rates; (ii) the value(s) used for the Synergies; (iii) the incremental net debt expected to result from the Merger; and (iv) the expected value/cost to Company resulting from the Fifth Third Repurchase. As with the Discounted Cash Flow Analyses, these valuation analyses were performed by the Company's financial advisor, heavily relied on by shareholders, and are expected to represent a clear and accurate state of the two companies' finances. Thus, in summarizing the analyses in the Proxy, the Company must be completely transparent with the information provided. The failure to include this valuable information renders the summary of the analyses set forth in the Proxy materially incomplete and misleading.

38. With respect to the Financial Advisors' *Comparable Companies/Selected Public Companies* and *Selected Precedent Transactions* Analyses, the Proxy fails to disclose the individual multiples the Financial Advisors calculated for each company and transaction utilized. The omission of these multiples renders the summary of these analyses and the implied equity value reference ranges materially misleading. A fair summary of Companies and Transactions Analyses requires the disclosure of the individual multiples for each company and transaction; merely providing the range that a banker applied is insufficient, as shareholders are unable to assess

whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to alter the implied share price ranges.

39. With respect to the Financial Advisors' *Price Target* Summaries, the Proxy fails to disclose the individual price targets reviewed and utilized in the analyses. The omission of this information renders the corresponding summary materially misleading. A fair summary of price targets requires the disclosure of the individual targets observed from each equity research analyst; merely providing the range or inappropriate calculations based on a range is insufficient, as shareholders are unable to assess whether the banker summarized fairly, or, instead, provided only the figures that best present the price targets in light of to the Merger Consideration.

40. Finally, the Proxy fails to disclose crucial information regarding potential conflicts of interest faced by each of the Financial Advisors in violation of 17 C.F.R. § 229.1015(b)(4). While the Proxy communicates the historical relationships between each of the Financial Advisors and each of the companies involved in the Merger, it fails to adequately disclose current, ongoing, and future relationships and earnings. Specifically, the Company fails to disclose whether Credit Suisse is amongst the "various lenders" party to the Loan Agreement, involved in the financing of the Proposed Merger (including the Fifth Third Repurchase), what fees they may receive from such financing, and what percentage of their financial advisory fee, if any, is contingent upon the consummation of the Proposed Merger. Similarly, the Proxy fails to disclose the value to Morgan Stanley of assuming the administrative agent and collateral agent position in the Loan Agreement, whether they are involved in the financing of the Proposed Merger (including the Fifth Third Repurchase), what fees they may receive from such financing, and what percentage of their financial advisory fee is contingent, if any, upon the consummation of the Proposed Merger.

41. It is imperative for shareholders to be able to understand what factors might influence a financial advisor's analytical efforts. The financial advisor's own proprietary financial interest in a proposed merger must be carefully considered in assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the shareholders, might have. Especially when that motivation could rationally lead the advisor to favor a deal at a

less than optimal price, because the procession of a deal was more important to them, given their overall economic interest, than only approving a deal at truly fair price to shareholders. The failure to adequately disclose the interests of the Financial Advisors in the Proposed Merger renders the entirety of their work in the Proxy materially misleading.

42. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
## On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Item 1015 of the Exchange Act requires proxies, such as the one in question here, to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 C.F.R. § 229.1015(b)(4).

47. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

48. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial analyses performed by the the Financial Advisors in support of their fairness opinions; and (ii) potential conflicts of interest the Financial Advisors faced as a result of their historical, present, and future dealings with each party.

49. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

50. Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for both companies and the details surrounding discussions with other interested parties and the Financial Advisors. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy

identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review the bankers' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the A&R Co-operation Agreement, the preparation and review of strategic alternatives, and the review of both companies' financial projections.

52. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Vantiv within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Vantiv, and participation in and/or awareness of the Vantiv's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision making of Vantiv, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Vantiv, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

57. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the A&R Co-operation Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

60. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the A&R Co-operation Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 13, 2017

Respectfully submitted,

/s/ John C. Camillus
John C. Camillus (Bar No.0077435)

**LAW OFFICES OF JOHN C. CAMILLUS, LLC**
P.O. Box 141410
Columbus, OH 43214
Tel: (614) 558-7254
Fax: (614) 559-5731
Email: jcamillus@camilluslaw.com

*Counsel for Plaintiff*

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel: 212-971-1341
Fax: 212-202-7880
Email: jmonteverde@monteverdelaw.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Counsel for Plaintiff*